**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| _____ ) | | |
| KIMBERLY TRIMBLE, ) | | |
| ) | | |
|       **Plaintiff**, ) | | |
| ) | | |
|       **v.** ) | Civil Action No. 10-460 (RWR) | |
| ) | | |
| DISTRICT OF COLUMBIA <u>et al.</u>, ) | | |
| ) | | |
|       **Defendants.** ) | | |
| _____) | | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Kimberly Trimble brings this action against the District of Columbia, Metropolitan Police Department ("MPD") Chief Cathy Lanier, District of Columbia officials Janice Quintana and Roque Gerald, four unnamed MPD officers, and Joseph Randolph Mays, alleging a claim under 42 U.S.C. § 1983, common law negligence, a survival action, and wrongful death arising out of MPD's response to the fatal assaults on Erika Peters, Erik Harper, and Dakota Peters, Trimble's decedents. The District, Lanier, Quintana, and Roque (the "District defendants") have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Because Trimble fails to allege sufficiently that the District harmed her or her decedents as a result of a custom or policy, the District defendants' motion to dismiss will be granted with respect to Trimble's § 1983 claim. Supplemental jurisdiction

over Trimble's common law and D.C. statutory claims will be

declined, and her complaint will be dismissed.

BACKGROUND

The complaint alleges the following tragic facts.  The

decedents resided with Mays in an apartment in Northeast

Washington D.C.  (Compl. ¶ 3.)  MPD had responded to past calls

reporting domestic violence and child abuse at that apartment.

(Compl. at 6 ¶ 20.[1])  On March 21, 2009, MPD received a 911 call

from a child at the apartment, who screamed into the phone for

several seconds before becoming silent.  (Compl. at 6 ¶ 18.)

After the call taker unsuccessfully attempted to speak to the

caller, she contacted a dispatcher who sent police units to the

apartment.  (Id. at 6 ¶¶ 18-19.)  When officers arrived on the

scene, they knocked on the door and called the apartment's phone

repeatedly but received no response.  (Id. at 6 ¶ 21.)  The

officers did not force entry into the apartment for at least an

hour.  (Id. at 7 ¶ 15.)  When they breached the door, they

discovered Erika Peters and Erik Harper dead from multiple stab

wounds inflicted by Mays.  Dakota Peters lay bleeding on the

floor, and he died from Mays' stab wounds soon after arriving at

a local hospital.  (Id. at 4 ¶ 4, 7 ¶ 16.)

_____

[1] Certain paragraph numbers in the complaint appear twice.
Page numbers have been added for clarity.

Trimble, Erika Peters' sister and the duly appointed

Personal Representative of her Estate and the Acting Personal

Representative of the Estates of Erik Harper and Dakota Peters,

brought this suit against the District of Columbia, Lanier,

Quintana, Gerald, the four unnamed officers who responded to the

911 call, and Mays.[2]  Her § 1983 claim alleges that MPD engaged

in gender discrimination by treating domestic assaults

differently from non-domestic assaults, in violation of the Equal

Protection Clause.  (Id. at 8 ¶ 21.)  The District defendants

have moved to dismiss, arguing in part that Trimble has failed to

adequately plead that her alleged harms arose from an unlawful

policy, custom, or practice.  (Defs.' Mem. of P. & A. in Supp. of

Defs.' Mot. to Dismiss at 14-16.)

## DISCUSSION

"A Rule 12(b)(6) motion tests the legal sufficiency of a

complaint[.]"  Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir.

2002).  In considering a motion to dismiss for failure to state a

---

[2] Lanier, Quintana, and Gerald are sued in their individual capacities and in their official capacities as the Chief of MPD, the Director of the District of Columbia Office of Unified Communications, and the Director of the District of Columbia Child and Family Services Agency, respectively.  Because Trimble does not allege that any of these individuals were personally involved in the alleged wrongdoing, her individual capacity claims will be dismissed.  See Ekwem v. Fenty, 666 F. Supp. 2d 71, 76 (D.D.C. 2009) (dismissing claims against the Mayor of the District of Columbia in his individual capacity because the complaint did not allege that the Mayor had personal knowledge of or condoned the conduct that formed the basis for the plaintiff's complaint).

claim under Rule 12(b)(6), a court must construe the complaint in
the light most favorable to the plaintiff, id., and "the court
must assume the truth of all well-pleaded allegations." Warren
v. Dist. of Columbia, 353 F.3d 36, 39 (D.C. Cir. 2004). "[O]nce
a claim has been stated adequately, it may be supported by
showing any set of facts consistent with the allegations in the
complaint." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563
(2007). Accord Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans
Inc., 525 F.3d 8, 15 (D.C. Cir. 2008). But see Tooley v.
Napolitano, 586 F.3d 1006, 1007 (D.C. Cir. 2009) (declining to
reject or address the government's argument that Ashcroft v.
Iqbal, 129 S. Ct. 1937 (2009), invalidated Aktieselskabet). A
complaint should contain enough factual heft to show an
entitlement to relief. Twombly, 550 U.S. at 557. That is, a
complaint needs to plead "only enough facts to [nudge] a claim to
relief . . . across the line from conceivable to plausible[.]"
Id. at 570. "Determining whether a complaint states a plausible
claim for relief . . . [is] a context-specific task that requires
the reviewing court to draw on its judicial experience and common
sense." Iqbal, 129 S. Ct. at 1950.

I.  MUNICIPAL LIABILITY

Section 1983 makes it unlawful for a person acting under
color of state or District of Columbia law or custom to deprive
another of any federal constitutional or statutory rights.  42
U.S.C. § 1983.  To state a claim under § 1983 against the
District,[3] a plaintiff "must allege not only a violation of [her]
rights under the Constitution or federal law, but also that the
municipality's custom or policy caused the violation."  Warren,
353 F.3d at 38.  A municipality can be held liable under § 1983
only if the municipality's policy or custom causes the
plaintiff's injury; liability does not attach on a theory of
respondeat superior.  Monell v. Dep't of Soc. Servs., 436 U.S.
658, 691-94 (1978).  The plaintiff bears the burden of pleading
the existence of a municipal custom or practice that abridges her
federal constitutional or statutory rights.  Bonaccorsy v. Dist.
of Columbia, 685 F. Supp. 2d 18, 26 (D.D.C. 2010).  A plaintiff

---

[3] "A section 1983 suit for damages against municipal
officials in their official capacities is . . . equivalent to a
suit against the municipality itself."  Atchinson v. Dist. of
Columbia, 73 F.3d 418, 424 (D.C. Cir. 1996).  "Based upon the
understanding that it is duplicative to name both a government
entity and the entity's employees in their official capacity[,]"
courts routinely dismiss claims against the officials to conserve
judicial resources when the entity itself is also sued.  Robinson
v. Dist. of Columbia, 403 F. Supp. 2d 39, 49 (D.D.C. 2005).
Because Trimble has sued the District of Columbia itself, her
claims against the individual defendants in their official
capacities are redundant.  The defendants' motion to dismiss
therefore will be granted with respect to claims against Lanier,
Quintana, and Gerald in their official capacities.

can plead the existence of a custom or practice in different ways. For example, she can allege that "the municipality or one of its policymakers explicitly adopted the policy that was 'the moving force of the constitutional violation.'" Warren, 353 F.3d at 39 (quoting Monell, 436 U.S. at 694). Alternatively, she can allege that a policymaker "knowingly ignore[d] a practice that was consistent enough to constitute custom." Id. A plaintiff can also allege that a municipality showed deliberate indifference to a risk and that not addressing that risk resulted in constitutional violations. Id. (citing Baker v. Dist. of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003)). However, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy," City of Okla. City v. Tuttle, 471 U.S. 808, 823-24 (1985); see also Byrd v. Dist. of Columbia, 297 F. Supp. 2d 136, 139 (D.D.C. 2003), or unless a single action actually establishes municipal policy. See Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986). Accordingly, pleading a single instance of a constitutional violation -- that does not itself establish municipal policy -- without connecting it to an existing, unconstitutional policy is not sufficient to state a claim under § 1983. See Bonaccorsy, 685 F. Supp. 2d at 27.

Courts in this district have dismissed § 1983 claims where a plaintiff has failed to allege sufficiently the existence of a policy or custom in her complaint.  In <u>Bonaccorsy</u>, 685 F. Supp. 2d at 20, the plaintiff, an MPD detective, requested a temporary protective order against another police officer after an altercation.  After an investigation, MPD proposed suspending the plaintiff for fifteen days for "engaging in behavior that was prejudicial to the reputation and good order of the police force[.]"  <u>Id.</u>  The plaintiff asserted a claim under § 1983 against the District of Columbia, alleging that her suspension violated the First Amendment by retaliating against her for exercising her right to petition the courts for a protective order.  <u>Id.</u> at 21.  The court dismissed her § 1983 claim, reasoning that she

> does not sufficiently allege that a policy or custom caused her harm.  While she does allege that a policy maker adopted a suspension in her case that violated her First Amendment rights, she cites only this single incident of a purported violation and does not connect it to an existing, unconstitutional D.C. policy, and she does not allege that other MPD employees were similarly retaliated against for exercising their First Amendment rights.

<u>Id.</u> at 26-27.  Similarly, in <u>Sanders v. Dist. of Columbia</u>, 522 F. Supp. 2d 83, 86-87 (D.D.C. 2007), the plaintiff, an MPD officer, alleged that the District violated his First Amendment right to free speech by retaliating against him after he reported other

employees for abusing time and attendance policies.  The court

dismissed the plaintiff's § 1983 claim on the grounds that

> Plaintiff has not alleged that the District of Columbia
> had a policy or practice of retaliating against
> employees for exercising the right to free speech under
> the First Amendment or that he suffered injury because
> of any such custom or policy.  Nor has plaintiff
> pointed to any other employee who suffered similar
> retaliation.  The policy or custom must be pervasive to
> support municipal liability, and the Court finds that
> the one incident of alleged retaliation against Sanders
> does not qualify as pervasive.  Plaintiff asserts that
> he has alleged sufficient facts on this point, but the
> Court concludes that he has not.

Id. at 88 (internal citation omitted).  In Plater v. D.C. Dep't

of Transp., 530 F. Supp. 2d 101, 107-08 (D.D.C. 2008), the Court

dismissed the plaintiff's § 1983 claim that race motivated the

District's upkeep of sidewalks because "[o]ther than a single

conclusory statement about the comparative conditions in

different neighborhoods, plaintiff alleges *no* facts to support

her claim that the District has a racially discriminatory policy

or practice of maintaining the public sidewalks differently in

different neighborhoods."  Accord Ekwem v. Fenty, 666 F. Supp. 2d

71, 79 (D.D.C. 2009) (noting that even if plaintiff had alleged

an equal protection violation, he did not state a claim under

§ 1983 because he pled no facts supporting the existence of a

discriminatory policy or practice).

Here, Trimble alleges that "the MPD has one or more

policies, practices, and customs which result in domestic assault

crimes being treated differently from non-domestic assaults.

Since women are most often the victims of domestic violence, the policy, practice, and custom also reflect an intention to discriminate against women[.]" (Compl. at 8 ¶ 21.) Trimble asserts that the "execution of these policies, practices, and customs results in domestic assault crimes being responded to in a less aggressive, less thorough fashion than in non-domestic assaults," and that the District of Columbia Child and Family Services Agency's "policies, practices, and customs have resulted in a large number of complaints, including one or more concerning alleged child abuse involving Defendant Joseph R. Mays, that either went unanswered or insufficiently answered[.]" (Id. at 8 ¶ 22, 10 ¶ 32.)

However, she does not name or identify the policies, practices, or customs, nor does she cite any incident other than the events alleged in her complaint that might provide a basis for concluding that MPD has any gender discriminatory policies, practices, or customs. Indeed, Trimble's allegations do not necessarily allow for the conclusion that gender discrimination motivated MPD's actions in this case, yet alone in other instances. Rather, the complaint concedes that "for reasons that are inexplicable, the officers did not force entry to the apartment for at least an hour despite knowing someone, quite

likely a child[,] could be injured inside."[4]  (Compl. at 7 ¶ 15.)

As in Bonaccorsy, Sanders, Plater, and Ekwem, merely speculating

that an unidentified policy and uncorroborated practice or custom

exists without providing any factual heft to support the

allegation is insufficient to state a claim under § 1983.  See

also Iqbal, 129 S. Ct. at 1950 (a court is "not bound to accept

as true a legal conclusion couched as a factual allegation"

(internal quotations and citation omitted)).  Accordingly,

Trimble's § 1983 claim against the District will be dismissed.[5]

II.  SUPPLEMENTAL JURISDICTION

Trimble's District of Columbia statutory and common law

claims remain.  "[I]n any civil action of which the district

---

[4] Trimble's complaint asserts that the officers failed to
enter because MPD lacks "a consistent effective policy, practice,
and custom concerning the gaining of entry to a home immediately,
upon credible information suggesting a person inside is in
imminent peril and in need of immediate assistance[,]" and that
the "lack of such a policy amounts to a deliberate indifference
to the rights of domestic violence victims and child abuse
victims[.]"  (Compl. ¶¶ 44-45.)  Because every victim would seem
to suffer equally from the lack of such a policy, and Trimble has
provided no factual basis in her complaint upon which to conclude
that the lack of an effective policy for home entry has any
adverse effect on an identifiable group, this allegation does not
amount to a violation of the Equal Protection Clause.  See Iqbal,
129 S. Ct. at 1948.  Thus, Trimble does not state a § 1983 claim
on this basis.  See Feirson v. Dist. of Columbia, 506 F.3d 1063,
1066 (D.C. Cir. 2007) (noting that to impose liability under
§ 1983, a plaintiff must show a violation of his rights under the
constitution or federal law).

[5] The complaint asserts no § 1983 claim against Mays since
it does not allege any actions taken by him under color of
District of Columbia law.  See 42 U.S.C. § 1983.

- 11 -

courts have original jurisdiction, the district courts shall have
supplemental jurisdiction over all other claims that . . . form
part of the same case or controversy[.]"  28 U.S.C. § 1367(a).
However, supplemental jurisdiction "'is a doctrine of discretion,
not a plaintiff's right.'"  Shekoyan v. Sibley Int'l, 409 F.3d
414, 423 (D.C. Cir. 2005) (quoting United Mine Workers v. Gibbs,
383 U.S. 715, 726 (1966)).  A district court, in its discretion,
may choose not to exercise supplemental jurisdiction over a claim
if "the district court has dismissed all claims over which it has
original jurisdiction[.]"  28 U.S.C. § 1367(c)(3); see also Mead
v. City First Bank of DC, N.A., 616 F. Supp. 2d 78, 81 (D.D.C.
2009).  In making such a determination, a court must balance
considerations of judicial economy, convenience, fairness, and
comity.  Skekoyan, 409 F.3d at 424.  Typically, if all federal
law claims have been dismissed, the factors counsel against
exercising supplemental jurisdiction.  See, e.g., Ali Shafi v.
Palestinian Auth., 686 F. Supp. 2d 23, 31 (D.D.C. 2010)
(declining to exercise supplemental jurisdiction over Israeli law
claim after dismissing claims over which there existed original
jurisdiction); Williams v. Savage, 569 F. Supp. 2d 99, 113
(D.D.C. 2008) (declining to exercise supplemental jurisdiction
over plaintiffs' fraud and negligence claims after dismissing all
claims over which there existed original jurisdiction and noting
that "dismissal does not prejudice the plaintiffs because the

pendency of the suit in federal court tolls the statute of limitations for the supplemental claims" (citing 28 U.S.C. § 1367(d))).

Because Trimble's § 1983 claim will be dismissed, there are no remaining claims over which there exists original subject-matter jurisdiction. No overriding concerns regarding fairness or convenience counsel against declining to exercise supplemental jurisdiction over the remaining D.C. common law and statutory claims over which the D.C. Superior Court has jurisdiction. Thus, these claims also will be dismissed.

CONCLUSION

Since Trimble has failed to plead sufficiently the existence of a municipal custom or practice that violates federal constitutional or statutory rights, she has not stated a claim under 42 U.S.C. § 1983. Supplemental jurisdiction over her remaining common law and D.C. statutory claims will be declined, and her complaint will be dismissed. A final Order accompanies this Memorandum Opinion.

SIGNED this 26th day of April, 2011.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge